UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BOOKER WILSON,

                                        Plaintiff,

    vs.                                                    9:11-CV-1088
                                                             (DNH/ATB)
WOODBOURNE CORRECTIONAL
FACILITY; DONALD DEPOLO,

                                        Defendants.
_____

BOOKER WILSON, Plaintiff *pro se*
JAMES J. SEAMAN, Asst. Attorney General for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation pursuant to 28 U.S.C. § 636(b) and LOCAL RULES N.D.N.Y. 72.3(c). In this civil rights complaint, plaintiff alleges that defendant Depolo violated plaintiff's First Amendment right to practice his religion and subjected him to excessive force in violation of the Eighth Amendment. (Compl.; Dkt. No. 1). Plaintiff claims that defendant Depolo engaged in this conduct because he does not like Muslims. Plaintiff seeks compensation for pain and suffering. (Compl. ¶ 8).

Presently before the court is defendant Depolo's[1] motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 14). Plaintiff has responded in opposition to the motion. (Dkt. No. 17). For the following reasons, this court agrees with defendant and

---

[1] Defendant Depolo is the only remaining defendant. The complaint was dismissed as against Woodbourne Correctional Facility by Judge Hurd's Order, dated November 15, 2011. (Dkt. No. 5).

will recommend dismissal of the complaint in its entirety with prejudice.

## DISCUSSION

**I.** <u>**Facts**</u>

In the complaint, plaintiff alleged that defendant Corrections Officer Depolo "misuse[d] his power" when he withheld plaintiff's Ramadan meal for one and one half hours. Plaintiff states that he had been fasting due to the Ramadan Holiday, and the meal that would have broken the fast was delayed from 8:17 p.m. until 9:45 p.m. (Compl. ¶ 6). In his response to defendant's motion to dismiss, plaintiff states that this incident occurred on August 2, 2011.[2]

Plaintiff also claims in the complaint that defendant Depolo threw away all plaintiff's "good stuff," including a pair of "medical boots" that were purchased for plaintiff by the State after an operation on plaintiff's feet.[3] Plaintiff alleges that defendant Depolo put handcuffs on plaintiff too tightly when taking him to shower and to recreation. (*Id.*) Plaintiff claims that defendant always gave him "hate looks," made a "gun sign" with his hands, and called plaintiff a "terrorist" because he is Muslim. Plaintiff states that the 23 days he spent in the "Box" was "hell," and that he did not enjoy his Ramadan at all because of defendant's conduct. (*Id.*)

---

[2] Defendant pointed out in his memorandum of law that the complaint did not specify a particular date for the alleged conduct. (Dkt. No. 14-1 at 3; CM/ECF- assigned pages).

[3] In plaintiff's response to the motion to dismiss, he alleges that on August 26, 2011, when plaintiff was being moved to another housing area, defendant Depolo forced plaintiff to wear boots that were not his. (Dkt. No. 17 at 4). In his response, plaintiff further states that when he asked about his medical boots, defendant Depolo stated that he did not "know where they were." (*Id.*) From this statement, plaintiff assumed that defendant Depolo threw away plaintiff's boots "to be evil." (*Id.* at 5).

After the complaint was filed, plaintiff sent a letter to the court stating that Woodbourne Correctional Facility ("Woodbourne") returned his property on September 29, 2011. (Dkt. No. 4). Plaintiff states that he did get his medical boots back, but some of his unspecified "stuff" was "still missing." (*Id.*) Plaintiff's response to defendant's motion is unclear. Part of the document is typewritten, and part of the document is written in plaintiff's handwriting, but many of the facts in the typewritten portion are duplicative of the handwritten facts.[4] In the response, plaintiff clarifies that the date defendant allegedly delayed plaintiff's Ramadan meal was August 2, 2011, and the date that plaintiff was denied his medical boots appears to have been August 26, 2011.[5] (Dkt, No. 17 at 3, 4).[6] Plaintiff states that defendant Depolo abused his authority, violated the "'officer & employee manual and (74 of the public health law.) Unlawful exaction of Domination)." (Dkt. No. 17 at 1).

---

[4] The court notes that in the typewritten portion of the plaintiff's response, he mentions that when he was arguing with defendant Depolo about the medical boots, the defendant stated that "he didn't care about all of that this is punishment from Ramadan and snitching on him to the Sgt. which is really his buddy." (Dkt. No. 17 at 2). This is the first, and only time, that plaintiff mentions anything that approaches a claim of retaliation for "snitching." There is absolutely no basis for this claim, and neither the complaint, nor any of plaintiff's handwritten documents mention this. Such a conclusory allegation of "retaliation," to the extent that plaintiff would have wished to add it to his complaint would be dismissed on the pleadings. *Gill v. Pidlypchak*, 389 F.3d 378, 380 (2d Cir. 2004) (citation omitted). Claims of retaliation are "easily fabricated" and thus, plaintiff must set forth non-conclusory allegations. *Id.* (citing *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds, Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002)). Additionally, any claim of retaliation is further weakened by the fact that plaintiff's boots were returned to him three days later on September 29, 2011. (Dkt. No. 4).

[5] Plaintiff alleges that defendant Depolo made plaintiff wear other boots. (Dkt. No. 17 at 5).

[6] The court will refer to the pages of documents as assigned by the court's electronic filing system CM/ECF.

3

## II. <u>Motion to Dismiss</u>

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*, 550 U.S. at 555 (citation omitted).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 71 (2d Cir. 1995). The court must heed its particular obligation to treat *pro se* pleadings with liberality. *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) (*per curiam*).

In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference. *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d at 72 (the court may take into consideration documents referenced in or attached to the

4

complaint in deciding a motion to dismiss, without converting the proceeding to one for summary judgment).

### III. Religion

The First Amendment guarantees the right to the free exercise of religion. *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005). "Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." *Ford v. McGinnis,* 352 F.3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). This right "is not absolute or unbridled, and is subject to valid penological concerns, including those relating to institutional security." *Johnson v. Guiffere,* 04-CV-57, 2007 WL 3046703, at *4, 2007 U.S. Dist. LEXIS 77239 (N.D.N.Y. Oct.17, 2007). The Free Exercise Clause extends "beyond mere attendance at congregate religious services into other aspects of prison life including, pertinently, that of an inmate's diet. . . ." *Id*. The Second Circuit has held that it is "clearly established that a prisoner has a right to a diet consistent with his or her religious scruples. . . ." *Ford,* 352 F.3d at 597 (citations omitted). Therefore, to "deny prison inmates the provision of food that satisfies the dictates of their faith . . . unconstitutionally burden[s] their free exercise rights." *McEachin v. McGuinnis,* 357 F.3d 197, 203 (2d Cir. 2004).

The withholding of a single meal, however, is at most, a *de minimis* burden on plaintiff's religious expression. *See, e.g., Evans v. Albany Cty. Corr. Fac*., No. 05-CV-1400, 2009 WL 1401645, at *8 (N.D.N.Y. May 14, 2009) (receipt of "wrong meals" approximately 18 out of 354 times is *de minimis* and not actionable under First

Amendment); *Ward v. Goord*, No. 9:06–CV–1429, 2009 WL 102928, at *9 (N.D.N.Y. Jan. 13, 2009) ("The failure to provide a single meal is insufficient to allege a constitutional violation."); *Odom v. Dixion*, No. 04–CV–0889, 2008 WL 466255, at *11 (W.D.N.Y. Feb. 15, 2008) (failure to provide inmate kosher meals on 7 out of 33 occasions not sufficient under First Amendment or RLUIPA[7]); *Thomas v. Picio*, No. 04–CV–3174, 2008 WL 820740, at *6 & n. 8 (S.D.N.Y. Mar. 26, 2008) (assuming inmate plaintiff was denied three or four Kosher meals for one or two consecutive days, "such a denial is not a substantial burden" on her free exercise of religion). *See also Norwood v. Strada*, 249 F. App'x 269, 272 & n. 1 (3d Cir. 2007) (denial of religiously certified "halal" meals on seven out of seven occasions, during prison's two-and-one half-day emergency lock-down, was "a mere de minimis intrusion" that failed to substantially burden the inmate's religious beliefs). *Cf. Ford v. McGinnis*, 352 F.3d 582, 594 n. 12 (2d Cir. 2003) (whether an inmate's religious beliefs were burdened by a prisonss refusal to serve a meal for the Eid ul Fitr feast was a question

---

[7] The Religious Land Use and Institutionalized Persons Act ("RLUIPA") also protects inmates' religious rights. RLUIPA prohibits the government from imposing a substantial burden on a prisoner's religious exercise unless the burden is the least restrictive means of furthering a compelling governmental interest. *See* 42 U.S.C. § 2000cc-l(a). For a burden to be substantial, a plaintiff must demonstrate that the government's action pressures him to commit an act forbidden by his religion or prevents him from engaging in conduct or having a religious experience mandated by his faith. In addition, this interference must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine. *Pugh v. Goord*, 571 F.Supp.2d 477, 504–05 (S.D.N.Y.2008); *Graham v. Mahmood*, No. 05–10071, 2008 WL 1849167, at *14 (S.D.N.Y. Apr. 22, 2008). In this case, plaintiff never mentions RLUIPA, but to the extent that the court could interpret such a claim, it would also be subject to dismissal. Delaying plaintiff's meal for one and one half hours is, at worst, an inconvenience, not a substantial burden.

of fact, but noting that the "feast is sufficiently unique in its importance within Islam to distinguish the present case from those in which the mere inability to provide a small number of meals commensurate with a prisonerss religious dietary restrictions was found to be a *de minimis* burden").

In this case, plaintiff claims that defendant Depolo does not like Muslims, and as a result, *one*[8] of plaintiff's Ramadan meals was *delayed* for approximately one and one half hours. Plaintiff claims that he was scheduled to break his fast by eating at 8:17 p.m., but did not eat until 9:45 p.m. This delay is a *de minimis* burden on plaintiff, and he states no constitutional or statutory violation as a result. Thus, plaintiff's First Amendment Freedom of Religion claim may be dismissed.

## IV. <u>Tight Handcuffs</u>

Inmates enjoy Eighth Amendment protection against the use of excessive force, and may recover damages under 42 U.S.C. § 1983 for a violation of those rights. *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992). The Eighth Amendment's prohibition against cruel and unusual punishment precludes the "unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000). To sustain a claim of excessive force under the Eighth Amendment, a plaintiff must establish both objective and subjective elements. *Blyden*

---

[8] Although the typewritten portion of plaintiff's response states that he was "denied" his meal on "two different occasions" (Dkt. No. 17 at 1 – typewritten portion of plaintiff's response), there is no indication from plaintiff's complaint or any other handwritten document that plaintiff was "denied" any meals. It is clear that the Ramadan meal was merely delayed (Dkt. No. 1 at ¶ 6; Dkt. No. 17 at 3 – handwritten portion of plaintiff's response), and there is no indication when, if ever, another meal was denied. In any event, even assuming that one meal was delayed and another was denied, the deprivation does not rise to the level of a constitutional violation.

*v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999).

In order to satisfy the objective element of the constitutional standard for excessive force, the defendants' conduct must be "'inconsistent with the contemporary standards of decency.'" *Whitely v. Albers*, 475 U.S. at 327 (citation omitted); *Hudson*, 503 U.S. at 9. However, "the malicious use of force to cause harm constitute[s][an] Eighth Amendment violation per se" regardless of the seriousness of the injuries. *Blyden*, 186 F.3d at 263 (citing *Hudson*, 503 U.S. at 9). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (citations omitted). " 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" *Sims*, 230 F.3d at 22 (citation omitted).

The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." *Id*. at 21 (citation omitted). The wantonness inquiry "turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id*. (quoting *Hudson*, 503 U.S. at 7). In determining whether defendants acted in a malicious or wanton manner, the Second Circuit has identified five factors to consider: the extent of the injury and the mental state of the defendant; the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made

by the defendants to temper the severity of a forceful response." *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003).

Plaintiff alleges that defendant Depolo placed handcuffs on plaintiff too tightly when escorting plaintiff to recreation or to the shower. The court need not reach the subjective element of the standard for excessive force. Plaintiff's allegation, without more, that defendant Depolo put handcuffs on too tightly is clearly *de minimis,* and is certainly not "repugnant to the conscience of mankind." Although overly tight handcuffing may constitute excessive force,[9] in order to rise to the constitutional level, it must cause some injury beyond temporary discomfort. *See Schy v. Vermont*, 2 F. App'x 101, 101-102 (2d Cir. 2001) (painful handcuffing for two hours does not violate the Constitution); *Lynch ex rel. Lynch v. City of Mt. Vernon*, 567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008) (citing cases); *Wang v. Vahldieck*, No. 09-CV-3783, 2012 WL 92423, at *7 (E.D.N.Y. Jan. 9, 2012) (dismissing excessive force claim where there was no physical injury associated with the tight handcuffs); *Cunningham v. McCluskey*, No. 05 Civ. 10169, 2011 WL 2791336, at *7 (S.D.N.Y. June 22, 2011) (tight handcuffing was not excessive force where plaintiff suffered no physical injury as a result). Plaintiff in this case does not allege any injury that occurred as a result of these "real tight" handcuffs. (Compl. ¶ 6). These allegations do not even approach

---

[9] Courts have considered the following factors in making the determination of whether a "tight handcuff" claim rises to the level of excessive force. *See Ahmad v. Port Authority of New York and New Jersey*, No. 09-CV-3134, 2011 WL 7080691, at *7 (E.D.N.Y. Dec. 7, 2011). Courts consider whether the handcuffs were unreasonably tight; the defendants ignored the individual's pleas regarding the tightness of the cuffs; and the degree of injury to the wrist. *Id.* (citations omitted). Plaintiff in this case never claims that he requested defendant to loosen the cuffs, and there is no injury asserted.

9

stating a claim for excessive force, and any such claim may be dismissed.

## V. **Verbal Harassment**

Verbal abuse and harassment, whether threatening, vulgar, or racial in nature, does not, by itself, rise to the level of a constitutional violation. *See, e.g., Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986); *Ramirez v. Holmes*, 921 F. Supp. 204, 210 (S.D.N.Y. 1996). In this case, plaintiff alleges that defendant gave him "hate looks" and made a "gun sign." According to plaintiff, he looks like Osama Bin Laden, but he has never had any trouble until being incarcerated at Woodbourne. Even if the defendant did give plaintiff "hate looks" or made a threatening "gun sign," plaintiff alleges no injury as a result, and that form of harassment does not state a constitutional claim. Plaintiff's allegations of verbal harassment may be dismissed.

## VI. **Property**

The deprivation of property, whether intentional or unintentional is not actionable under section 1983 as long as the state provides an adequate post-deprivation procedure. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). New York provides an adequate post-deprivation remedy in the Court of Claims with respect to property claims by prison inmates. *See Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1996); *Love v. Coughlin*, 714 F.2d 207, 209 (2d Cir. 1983); *see also* N.Y. Ct. Cl. Act § 10(6) (McKinney 1998).

Plaintiff claimed that defendant Depolo "threw away" plaintiff's good stuff,

including his medical boots.[10]  However, in a letter dated October 3, 2011, plaintiff stated that his property (including the medical boots) was returned to him, although some was still missing. (Dkt. No. 4).  Clearly, based on plaintiff's own letter, defendant Depolo did not "throw away" plaintiff's medical boots, and plaintiff has not articulated what "stuff" was still missing from his property.  However, even if some of plaintiff's property were not returned to him, he would have an adequate post-deprivation remedy in the Court of Claims, and any remaining property claims may be dismissed.

## VII. State Law Violations

A violation of state law, even assuming that one existed, does not necessarily rise to the level of a constitutional violation.  *See, e.g., Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (state law violation does not necessarily rise to the level of a constitutional violation)*; Young v. County of Fulton*, 160 F.3d 899, 902 (2d Cir. 1998) (violation of state law is not the "benchmark" for determining whether a constitutional violation has occurred).

In plaintiff's response to defendant's motion to dismiss, he alleges that the defendant violated the "officer and employee manual" and section 74 of the Public Health Law. (Dkt. No. 17 at 1).  It is unclear to which "manual" plaintiff is referring, and there is no section 74 of the New York Public Health Law.  Even assuming that

---

[10] Plaintiff also refers to this claim as "medical negligence" although he does not allege that he suffered any harm as a result of wearing different boots.  Because plaintiff's boots were returned to him, and it does not appear as though defendant Depolo was even involved in the deprivation, the court will not address the issue of medical care.

the court could decipher plaintiff's allegation, at best, he is claiming that the defendant violated state law without any further explanation. This claim may also be dismissed for failure to state a constitutional claim.

## VIII. Opportunity to Amend

The court should not dismiss a *pro se* action without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim may be asserted. *Parrino v. SunGard Availability Services, L.P.*, No. CV 11-3315, 2012 WL 826946, at *4 (E.D.N.Y. Feb. 16, 2012) (citing *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). In this case, even under a liberal reading of the complaint, there is no way that plaintiff could state a claim regarding his medical boots or any of his other property items, because it is clear by plaintiff's own admission, that his boots were returned to him, and defendant Depolo had nothing to do with the deprivation.[11] Plaintiff's claim of verbal harassment also fails to state a claim, and there is no way a claim could be stated based on the facts that plaintiff alleges. Plaintiff's claim that a religious meal was delayed for one and one half hours may not be the basis for a constitutional claim, regardless of amendment. Plaintiff has not stated any injury as the result of his "real tight" handcuffs, and his claim that defendant violated state law will not rise to the level of a constitutional

---

[11] The court also notes that plaintiff's response to the defendant's motion to dismiss, dated March 1, 2012 contains some misleading statements. Plaintiff continued to state that defendant threw plaintiff's boots away and adds that he did this to "be evil." (Dkt. No. 17 at 5). However, plaintiff's letter, dated October 3, 2011 states that Woodbourne returned his property to him, including his medical boots. Thus, it is unclear why plaintiff would still be claiming on March 1, 2012 that defendant threw away plaintiff's boots to be "evil" when plaintiff was well aware by that time, that defendant did not throw away plaintiff's property.

violation. Thus, this court will recommend dismissal without giving plaintiff the opportunity to amend his complaint.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendant's motion to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. No. 14) be **GRANTED**, and the complaint **DISMISSED IN ITS ENTIRETY WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: March 21, 2012

_____
Hon. Andrew T. Baxter
U.S. Magistrate Judge